IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TEAMSTERS LOCAL UNION NO. 107 | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MADISON CONCRETE CONSTRUCTION, | : | |
| Defendant and Third-Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY SGRILLO, | : | |
| Third-Party Defendant | : | NO.  22-3721 |

**MEMORANDUM**

**Padova, J.**                                              **December 29, 2023**

Plaintiff, Teamsters Local Union No. 107 (the "Union"), brought this action under Section

301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a) ("LMRA") to enforce

an August 16, 2022 grievance decision reinstating Union member Anthony Sgrillo, a former

employee of Defendant Madison Concrete Construction ("Madison Concrete"), with full seniority,

wages and fringe benefits.  Madison Concrete has filed a Motion to Vacate Arbitration Award and

the Union has filed a Motion to Strike Madison Concrete's Affirmative Defenses to the Complaint.

For the reasons that follow, we deny Madison Concrete's Motion to Vacate and grant the Union's

Motion to Strike in part and deny it in part.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Union and Madison Concrete are parties to the Supplemental Agreement, pursuant to

which they both agreed to the application of the National Master Freight Agreement and the

Philadelphia, Pennsylvania and Vicinity Supplemental Agreement for the period from April 1,

2008 through March 31, 2013 (the "Philadelphia Supplemental Agreement") (the Supplemental

Agreement, the National Master Freight Agreement, and the Philadelphia Supplemental Agreement are referred to collectively as the "CBA"). (Compl. ¶ 6; Answer ¶ 6; Compl. Ex. A.) The Supplemental Agreement is effective for the period from April 1, 2022 through March 31, 2025. (Id.) Article 7 of the National Master Freight Agreement and Article 44 of the Philadelphia Supplemental Agreement set forth a procedure for resolving grievances between the parties. (National Master Freight Agreement (Madison Concrete Motion to Vacate Ex. ("Madison Concrete Ex.") A) at 37-43; Philadelphia Supplemental Agreement (Madison Concrete Ex. B) at 190-194.) Article 44, Section 5 provides that decisions rendered by the Joint Area Committee created to hear grievances (also referred to as the "Grievance Committee") "shall be final and binding on both parties with no further appeal." (Philadelphia Supplemental Agreement Article ("Art.") 44, § 5(a).)

On June 22, 2022, the Union presented a grievance to Madison Concrete, stating that Madison Concrete had unjustly discharged Anthony Sgrillo on June 9, 2022. (Union Br. in Opp. Ex. ("Union Ex.") 3.) The Grievance Committee held a hearing on this grievance on August 16, 2022. (Union Ex. 4; Schmidt Aff. (Union Ex. 5) ¶ 12.) During the hearing, the Union raised a point of order that Madison Concrete had failed to provide written notice of his termination to Sgrillo, with a copy to the Union, as required by Article 45, Section 2 of the Philadelphia Supplemental Agreement. (Philadelphia Supplemental Agreement Art. 45 § 2(a); Schmidt Aff. ¶¶ 6, 13; Nugent Aff. (Union Ex. 7) ¶ 6; Smith Aff. (Union Ex. 8) ¶ 6.) Madison Concrete was represented at the hearing by Jim Dolente, Jr., who responded that Madison Concrete was not aware of, or did not understand, the notice process. (Schmidt Aff. ¶ 14; Nugent Aff. ¶ 7; Smith Aff. ¶ 7.) The Grievance Committee told Dolente that Madison Concrete should try to settle the dispute. (Schmidt Aff. ¶ 16; Smith Aff. ¶ 8.) "Dolente reacted as though an adverse decision had

2

been made, which was not the case, and left the hearing room and the premises." (Schmidt Aff. ¶ 16.)

The Grievance Committee issued the following decision: "The panel, in Executive Session, motion made, seconded, and carried. Unions [sic] point of order upheld[.] Grievant be [sic] returned to work with full seniority and wages, H/W/pension. Cost Company." (Union Ex. 4.) The decision was emailed to Madison Concrete on August 16, 2022 at 2:56 pm with the official minutes of the hearing. (Compl. Ex. C.) At 3:35 pm, Dolente emailed the Union's Business Agent, Michael Nugent, stating "Mr. Sgrillo is terminated per my letter to you today. . . . If there's another way to get this behind us that doesn't involve employment, I'm happy to listen." (Id.) Dolente's August 16, 2022 letter states "[a]s you are already aware, Anthony Sgrillo was terminated for just cause on June 9, 2022. I am unaware where Mr. Sgrillo resides and humbly request you forward this correspondence to him." (Union Ex. 9.)

The Complaint asserts one claim for breach of contract. The Complaint alleges that Madison Concrete breached the CBA by failing to abide by the decision of the Grievance Committee. The Union seeks the entry of an order confirming the Grievance Committee's decision, requiring Madison Concrete to comply with that decision, directing it to pay Sgrillo all wages due and make required benefit fund contributions on his behalf, and awarding the Union reasonable attorney's fees and costs.[1]

---

[1] Madison Concrete has brought a Cross-Claim and Third-Party Complaint against Sgrillo for conversion. The Cross-Claim and Third-Party Complaint alleges that on June 3, 2022, an employee of Madison Concrete asked Sgrillo about charges on his company-issued WEX fuel card that appeared to charge Madison Concrete for Sgrillo's personal-use fuel for the period from March 2018 through May 2022. (3d Party Compl. ¶ 4.) Sgrillo confirmed that the fuel purchases were for his personal use. (Id. ¶ 8.) The personal-use fuel charges total $15,326.06. (Id. ¶ 9, Ex. A.) Sgrillo had no legitimate business use for the fuel card and was not authorized to use the fuel card

## II.    MOTION TO VACATE ARBITRATION AWARD

A.    Legal Standard

Madison Concrete has moved pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, to vacate the August 16, 2022 decision issued by the Grievance Committee.  District Courts review arbitration awards "under an 'extremely deferential standard,' with the usual outcome being to 'affirm easily'"  because the FAA "imposes a strong presumption in favor of enforcing arbitration awards."  Prospect CCMC LLC v. Crozer Chester Nurses Ass'n/Pa. Ass'n of Staff Nurses & Allied Profs., 803 F. App'x 564, 567 (3d Cir. 2020) (quoting Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Health Care Workers E., 817 F.3d 857, 861 (3d Cir. 2016)).  However, this "'[e]ffusively deferential language notwithstanding, the courts are neither entitled nor encouraged simply to "rubber stamp" the interpretations and decisions of arbitrators.'" Hamilton Park, 817 F.3d at 861 (quoting Matteson v. Ryder Sys. Inc., 99 F.3d 108, 113 (3d Cir. 1996)).

Pursuant to the FAA, we may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).  In addition, an award may be vacated if the arbitrators "were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  Id. § 10(a)(3).  "Moreover, an award may be vacated if the arbitrator demonstrates manifest disregard for the CBA."  Major League Umpires Ass'n v. Am. League of

_____

for his personal-use fuel.  (Id. ¶¶ 10, 12.)  Madison Concrete seeks judgment against Sgrillo in the amount of $15,326.06, attorneys' fees, interest and costs.  Sgrillo denies all of the factual allegations of the Cross-Claim and Third-Party Complaint.  (See generally Sgrillo Answer (Docket No. 30).)

Pro. Baseball Clubs, 357 F.3d 272, 280 (3d Cir. 2004) (citing Newark Morning Ledger Co. v. Newark Typographical Union Local, 797 F.2d 162, 165 (3d Cir. 1986)).  "Manifest disregard for the CBA is established when the arbitrator's award is 'totally unsupported by principles of contract construction.'"  Id. (quoting Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir. 1993) (internal quotation omitted)).  Furthermore, the FAA also provides that the District Court may vacate an arbitration award "where the award was procured by corruption, fraud, or undue means" or "where there was evident partiality or corruption in the arbitrators, or either of them."  9 U.S.C. § 10(a)(1), (2).

B.     Discussion

Madison Concrete argues that the decision of the Grievance Committee should be vacated under subsections two through four of 9 U.S.C. § 10(a) for the following reasons:  (1) the Grievance Committee exceeded its powers by manifestly disregarding the plain text of the agreements between the parties; (2) the Grievance Committee committed misconduct by refusing to hear material evidence; and (3) there was evident partiality on the part of the Grievance Committee.  While the Union opposes vacating the decision of the Grievance Committee for these reasons, it also maintains that the FAA does not apply to this dispute.

1.     Application of the FAA

The Union asks us to deny the Motion to Vacate Arbitration Award on the ground that the FAA doesn't apply to this case.  The Union asserts that the FAA does not apply because Sgrillo was engaged in interstate commerce while he was employed by Madison Concrete.  "The FAA does not apply to labor arbitrations that are excluded by FAA Section 1."  PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh, 19 F.4th 308, 312 n.3 (3d Cir. 2021) (citing 9 U.S.C. § 1).  The residual clause of Section 1 of the FAA states that "nothing herein contained shall apply to

contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.

The Supreme Court considered which workers are excluded from coverage by the residual clause of Section 1 of the FAA in Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001).  "The Circuit City Court was presented with the question of whether the residual clause of § 1 applies to all contracts of employment, or simply those of transportation workers."  Singh v. Uber Techs. Inc., 939 F.3d 210, 220 (3d Cir. 2019).  The Supreme Court "held that the residual clause of § 1 only exempts the contracts of employment of transportation workers."  Id. at 220-21 (citing Circuit City, 532 U.S. at 119; New Prime Inc. v. Oliveira, 586 U.S. __, 139 S. Ct. 532, 538 (2019)); see also New Prime, 139 S. Ct at 538 ("In Circuit City, we acknowledged that 'Section 1 exempts from the [Act] . . . contracts of employment of transportation workers.'" (alterations in original) (quoting Circuit City, 532 U.S. at 119)).  The Supreme Court also held in Circuit City "'that the § 1 exclusion provision [should] be afforded a narrow construction.'"  Harper v. Amazon.com Servs., Inc., 12 F.4th 287, 293 (3d Cir. 2021) (alteration in original) (quoting Circuit City, 532 U.S. at 118) (citing Wallace v. Grubhub Holdings, Inc., 970 F.3d 798, 800-02 (7th Cir. 2020)).

The Third Circuit has instructed that our determination of whether workers are covered by the residual clause of § 1 "turns on multiple factors . . . such as the parties' agreement, and the 'industry in which the class of workers is engaged.'"  Id. (quoting Singh, 939 F.3d at 227-28).  The CBA covers segments of the trucking industry.  (See National Master Freight Agreement Art. 2 § 2.)  The Philadelphia Supplemental Agreement covers employees engaged in operating trucks and other vehicles operating on highways and appears to encompass interstate commerce.  (See Philadelphia Supplemental Agreement Art. 40 § 2.)  The parties' agreement thus encompasses transportation workers.

6

The Union maintains that Sgrillo was engaged in interstate commerce when he worked for Madison Concrete because his job as a shop manager included dispatching company drivers to numerous long-term construction projects in New Jersey and because Sgrillo frequently crossed state lines to perform his job.  The Union has submitted Sgrillo's Affidavit, in which Sgrillo states that he performed significant work in New Jersey while he worked for Madison Concrete.  (Sgrillo Aff. (Union Ex. 1) ¶ 13.)  Sgrillo states in his Affidavit that he worked on a project for Madison Concrete at the Princeton Art Museum in 2021 and, during this project, he "went from Madison's Pennsylvania site to New Jersey at least twice weekly, delivering equipment and material to that job site."  (Id.)  Sgrillo also states in his Affidavit that he was similarly engaged in interstate commerce in prior projects he worked on for Madison Concrete in New Jersey.  (Id.)  However, the Third Circuit has explained that "'the inquiry regarding § 1's residual clause asks a court to look to classes of workers rather than particular workers.'"  Harper, 12 F.4th at 293 (quoting Singh, 939 F.3d at 227) (citing Wallace, 970 F.3d at 800).  Therefore, evidence that Sgrillo transported equipment over state lines as part of his job does not establish that the class of workers of which he was a part was engaged in interstate commerce and, therefore, that their employment contracts are exempt from the FAA.  As the Seventh Circuit explained in Wallace:  "in determining whether the exemption applies, the question is 'not whether the *individual worker* actually engaged in interstate commerce, but whether *the class of workers to which the complaining worker belonged* engaged in interstate commerce.'"  Wallace, 970 F.3d at 800 (quoting Bacashihua v. U.S. Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988)).  Consequently, "someone whose occupation is not defined by its engagement in interstate commerce does not qualify for the exemption just because she occasionally performs that kind of work."  Id. (citing Hill v. Rent-A-Center, 398 F.3d 1286, 1289-90 (11th Cir. 2005)).  Indeed, the Third Circuit has held that "a class of workers [is] 'engaged

in interstate commerce' for the purposes of § 1 . . . only if 'interstate movement of goods' or passengers is 'a central part' of the job description of the class." <u>Singh v. Uber Techs., Inc.</u>, 67 F.4th 550, 557 (3d Cir. 2023) (citing <u>Wallace</u>, 970 F.3d at 803) (add'l citations omitted).

Sgrillo states in his Affidavit that in 2021 he drove from Madison Concrete's site in Pennsylvania to a work site in New Jersey twice a week. (Sgrillo Aff. ¶ 13.) His Affidavit does not describe the type of work Sgrillo performed at the time he was terminated by Madison Concrete in June 2022. (<u>See</u> Sgrillo Aff.) The Union has submitted information taken from Madison Concrete's web page that shows that Madison Concrete has performed multiple projects in New Jersey. However, Madison Concrete is a construction company, not a transportation company. (<u>See</u> Union Ex. 2.) Moreover, while the Sgrillo Affidavit mentions some positions that Sgrillo held while he was employed by Madison Concrete, it does not state what group of workers he was classed with there or whether that class of workers was engaged in the interstate transportation of goods or passengers. Indeed, the Union has submitted no evidence that the class of Madison Concrete workers of which Sgrillo was a part was engaged in the interstate transportation of goods or passengers. <u>See</u> <u>Singh</u>, 67 F.4th at 557. We conclude, accordingly, that the Union has failed to establish that the FAA does not apply to the instant dispute because Sgrillo was part of a class of workers that was engaged in interstate commerce.

2.      <u>Manifest disregard of the essence of the agreements between the parties</u>

Madison Concrete argues that the decision of the Grievance Committee should be vacated because it did not draw its essence from the agreements between the parties and the Grievance Committee manifestly disregarded the plain text of those agreements. <u>See</u> <u>Major League Umpires</u>, 357 F.3d at 280 ("We should uphold an arbitration award that 'draws its essence from the collective bargaining agreement' because 'the parties to the collective bargaining agreement "bargained for"

8

a procedure in which an arbitrator would interpret the agreement.'" (quoting National Ass'n of Letter Carriers, AFL-CIO v. United States Postal Serv., 272 F.3d 182, 185 (3d Cir. 2001))).  As we mentioned above, "an award may be vacated if the arbitrator demonstrates manifest disregard for the CBA." Id. (citing Newark Morning Ledger, 797 F.2d at 165).  "Manifest disregard for the CBA is established when the arbitrator's award is 'totally unsupported by principles of contract construction.'"  Id. (quoting Exxon Shipping Co., 993 F.2d at 360 (internal quotation omitted)). Madison Concrete maintains that the Committee manifestly disregarded the plain text and essence of the CBA by ordering Sgrillo's reinstatement based on a procedural point of order, i.e., its failure to provide notice of discharge, because the CBA did not require advance notice of discharge. Specifically, Madison Concrete maintains that the Grievance Committee exceeded its powers because:  (1) the Philadelphia Supplemental Agreement did not require advance notice of Sgrillo's discharge in this case, (2) Madison Concrete provided notice of his discharge on August 16, 2022, curing any deficiency, and (3) the CBA does not provide that a discharge may be overturned if notice is not given.

a.      The Philadelphia Supplemental Agreement

Madison Concrete relies on Article 45, Section 2(b) of the Philadelphia Supplemental Agreement, which provides that "[e]xcept in cases involving 'cardinal' infractions under the applicable Supplemental Agreement, an employee to be discharged or suspended shall be allowed to remain on the job until the discharge or suspension is sustained under the grievance procedure." (Philadelphia Supplemental Agreement Art. 45 § 2(b).)  Infractions for which advance notice of discharge is not required include "[p]roven theft or dishonesty."  (Id. § 2(b)(3).)  Thus, since Sgrillo was terminated for theft, it appears that Madison Concrete was not required to provide advance

notice of Sgrillo's termination pursuant to Article 45, Section 2(b) of the Philadelphia Supplemental Agreement.

The Union, however, made its point of order pursuant to Article 45, Section 2(a) of the Philadelphia Supplemental Agreement, which provides that "[d]ischarge or suspension must be for just cause, and written notice of such discharge or suspension must be given by the Employer to the employee, and a copy of such written notice given to the Local Union." (Philadelphia Supplemental Agreement Art. 45 § 2(a); Schmidt Aff. ¶¶ 6, 13; Nugent Aff. ¶ 6.) This section does not contain any language requiring that an employer give notice of discharge in advance of the employee's termination. Rather, Section 2(a) "requires that written notice of a discharge or suspension . . . be given to the affected employee with a copy to the union" in order to "inform both the employee and the union of the specific reason for the discipline in order that they may present a meaningful grievance in response." (Schmidt Aff. ¶¶ 6-7.) The Union made this point of order because Madison Concrete did not provide written notice of Sgrillo's termination at any time prior to the grievance hearing. (Nugent Aff. ¶¶ 4-6.) We conclude that Madison Concrete's reliance on Article 45, Section 2(b) of the Philadelphia Supplemental Agreement is unavailing and we deny the Motion to Vacate with respect to this argument.

b.    Notice Sent by Madison Concrete After the Grievance Hearing

Madison Concrete also argues that the Grievance Committee's decision should be vacated because it cured any failure to comply with Article 45 Section 2(a) by providing written notice of Sgrillo's discharge to the Union on August 16, 2022. On August 16, 2022, Dolente sent a letter to Michael Nugent, business agent for the Union, which states "[a]s you are already aware, Anthony Sgrillo was terminated for just cause on June 9, 2022. I am unaware where Mr. Sgrillo resides and humbly request you forward this correspondence to him." (Nugent Aff. ¶ 1; Union Ex. 9.)

The Union admits that "Article 45, Section 2(a) does not specify when written notice of the discharge must be provided to the affected employee and the union." (Union Br. at 9.) However, the Union argues that a CBA does not have to cover every eventuality and that gaps may be filled in by the practices of a particular industry. The Union relies on Independent Laboratory Employees' Union, Inc. v. ExxonMobil Research and Engineering Co., 11 F.4th 210 (3d Cir. 2021). In this case, the Third Circuit instructed that our inquiry into the essence of a CBA "is not circumscribed by a rigid and mechanical examination of the text of the CBA. Long-established labor law does not allow us to take the view that 'an employee's claim must fail unless he [or she] can point to a specific contract provision upon which the claim is founded.'" Id. at 216 (alteration in original) (quoting United Steelworkers of Am., v. Warrior & Gulf Navigation Co., 363 U.S. 574, 579 (1960)). Instead, arbitrators "must be able to look to the practices of the industry and the shop—including past arbitration agreements and company statements—in addition to a CBA in adjudicating a labor dispute." Id. The Union has provided evidence that the Grievance Committee's interpretation of Article 45, Section 2(a) to require that a union be provided with notice of an employee's termination prior to a Grievance Committee hearing is based on industry practices. Schmidt explained in his Affidavit that the purpose of the notice requirement in Article 45, Section 2(a) "is to inform both the employee and the union of the specific reason for the discipline in order that they may present a meaningful grievance in response."[2] (Schmidt Aff. ¶

---

[2] Madison Concrete maintains that the Union didn't really need formal notice of Sgrillo's discharge for this reason because the grievance form submitted by the Union on Sgrillo's behalf requests "ANY AND ALL INFORMATION THE COMPANY HAS IN MAKING THIS DECISION TO TERMINATE EMPLOYMENT (E.G. WHO ISSUED THE CARD . . ." (Union Ex. 3.) However, this request for documentation is not proof that the Union was aware of "the specific reason for discipline." (Schmidt Aff. ¶ 7.) Moreover, Schmidt states in his Affidavit that "[t]here are no exceptions to the requirement of a written notice." (Id. ¶ 11.) We must conclude,

7.)  Schmidt also states that, while the Supplemental Agreement "does not specify that the notice must be given prior to any grievance hearing, the consistent practice of the various unions and employers to that contract has been to require that the notice be provided in advance of a grievance hearing."  (Id. ¶ 8.)  Schmidt further notes that "[t]here are no exceptions to the requirement of a written notice."  (Id. ¶ 11.)  Schmidt specifically rejects the possibility that Madison Concrete's August 16, 2022 email cured the point of order, explaining that he "ha[s] been informed that upon leaving the hearing, Dolente sent a communication to Nugent stating that Sgrillo was terminated on June 9. That notice would not meet the requirement of providing a written notice, as it was issued after the hearing was conducted."  (Id. ¶ 18.)  In his Affidavit, Joseph Smith, a business agent for Teamsters Local Union 326, states that he has been a member of the Joint Area Committee and the chairperson of that committee for several years.  (Smith Aff. ¶¶ 1, 3.)  He explains in his Affidavit that the notice of termination required by Article 45, Section 2(a) of the Supplemental Agreement "must be sent before any grievance hearing is conducted in order to apprise the member and the union of the reason for the discipline."  (Id. ¶ 4.)  We conclude that the Grievance Committee's upholding of the Union's point of order was not in manifest disregard of the CBA because it is the consistent practice of the parties to the CBA to interpret Article 45, Section 2(a) of the Supplemental Agreement to require written notice of a discharge prior to a grievance hearing.  (See Schmidt Aff. ¶¶ 6-8.)  Consequently, we deny the Motion to Vacate with respect to this argument.

---

accordingly, that the CBA does not permit exceptions to Article 45, Section 2(a)'s requirement of written notice when the grievance form indicates that the Union may have a general idea of why someone was terminated.

c.     CBA authority for overturning a discharge

Madison Concrete further asserts that the Grievance Committee manifestly disregarded the essence of the CBA in ordering that Sgrillo be reinstated because neither the National Master Freight Agreement nor the Philadelphia Supplemental Agreement provide that a discharge can be overturned if notice is not given.  The Union has not identified any language in the CBA that requires reinstatement for a failure to provide notice of termination pursuant to Article 45, Section 2(a).  However, as we discussed above, the Union does not have to point to a specific contract provision if such a requirement is the practice in the industry.  See  Indep. Lab'y Emps.' Union, Inc., 11 F.4th at 216.

The Union has provided evidence that the members of the Grievance Committee upheld the Union's point of order and ordered Sgrillo's reinstatement based on industry practices. Schmidt states in his Affidavit that he has participated as an employer representative in many panel hearings in which points of order have been "successfully raised and upheld where an employer has failed to provide written notice of discipline."  (Schmidt Aff. ¶ 10.)  He also states that the Grievance Committee decided to "reinstate Sgrillo and to require the company to pay back pay and to make health & welfare and pension fund contributions on his behalf" based on the point of order.  (Id. ¶¶ 15, 17.)  Schmidt further states that the Grievance Committee's "decision to uphold the Union's point of order was consistent with the manner in which the requirement of a written notice had been applied in the many years that [he has] been involved in the interpretation and application of that provision of the governing contract."  (Id. ¶ 19.)  Nugent states in his Affidavit that he has been a Union officer for 12 years and has "raised numerous points of order, which is the appropriate manner of challenging a company's failure to abide by procedural requirements of its contract, including a failure to give the Union written notice of any suspension or discharge of

13

an employee." (Nugent Aff. ¶ 11.)  Smith states in his Affidavit that "[a] point of order is the procedure to challenge a company's failure to adhere to procedural requirements and, if upheld, is dispositive, meaning that there is no further hearing on the merits of the challenged action." (Smith Aff. ¶ 13.)  Smith also states that he was the member of the Grievance Committee who moved to uphold the Union's point of order.  (Id. ¶ 11.)  He further states that he did so based "on the terms of the contract and the consistent applications of that provision," that he "was very familiar" with that provision, and that the provision "ha[s] been applied in like fashion many times over the years that [he] served on the grievance panel and the appropriate remedy was that which the panel imposed." (Id. ¶ 14.)

We conclude that the Grievance Committee's decision that Sgrillo should be reinstated was not in manifest disregard of the CBA even though the CBA does not specifically require that employees be reinstated if the employer fails to provide notice of their termination pursuant to Article 45, Section 2(a).  The record evidence shows that it has been the consistent practice of the Grievance Committee to uphold points of order based on failure to provide written notice pursuant to Article 45, Section 2(a) and that reinstatement is the appropriate remedy for such failure. Accordingly, we deny the Motion to Vacate with respect to this argument.

### 3.  Refusal to hear pertinent and material evidence

Madison Concrete contends that the Award should be vacated because it wasn't given the opportunity to present evidence with respect to the reason for Sgrillo's termination.  As we mentioned above, an award may be vacated pursuant to the FAA if the arbitrators "were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10(a)(3). "The cases make clear that vacatur pursuant to section 10(a)(3) is warranted only where 'the arbitrator's refusal to hear proffered testimony so affects the rights of a party that it may be

said that he was deprived of a fair hearing.'" Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646, 584 F.3d 513, 557 (3d Cir. 2009) (quoting Teamsters Local 312 v. Matlack, Inc., 118 F.3d 985, 995 (3d Cir. 1997)) (internal quotation omitted) (citations omitted).  Madison Concrete argues that evidence of Sgrillo's theft would have materially affected the Committee's decision because the evidence would have showed that Sgrillo committed a cardinal infraction and that Madison Concrete was justified in firing him.

The Union maintains that the Grievance Committee did not refuse to hear evidence that was pertinent and material to the controversy because evidence regarding the reason for Sgrillo's dismissal was not material to the Union's point of order.  Schmidt states in his Affidavit that there are no exceptions to the notice requirement of Article 45, Section 2(a), even for cardinal infractions.  (Schmidt Aff. ¶ 11.)  Since there is no exception from the Section 2(a) notice requirement for cardinal infractions, the reason for Sgrillo's termination would not have been pertinent to whether Madison Concrete failed to provide the requisite notice to Sgrillo and the Union.  Moreover, Dolente left the grievance hearing immediately after Schmidt told him "that it may not go well for Madison and suggested that he try to settle the matter with the Union." (Id. ¶ 16; see also Nugent Aff. ¶ 9; Smith Aff. ¶¶ 8-10.)  We find, accordingly, that Dolente left the grievance hearing without attempting to submit any evidence regarding Sgrillo's termination.  We conclude that there is no evidence that the Grievance Committee failed to allow Dolente to offer evidence regarding the reason for Sgrillo's termination at the grievance hearing and that such evidence would not have been pertinent or material to the Grievance Committee's decision.  Therefore, we deny the Motion to Vacate Arbitration Award with respect to this argument.

4.    <u>Partiality</u>

Madison Concrete argues that the Award should be vacated because the Grievance Committee demonstrated evident partiality both when it told Dolente that it would rule against Madison Concrete unless it settled the grievance and when it refused to allow Madison Concrete to put on evidence.  As we discussed earlier, the FAA provides that a district court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators."  9 U.S.C. § 10(a)(2).  Madison Concrete contends that members of the Grievance Committee demonstrated their partiality in favor of the Union by telling Dolente that they would rule against him and by refusing to allow him to present evidence regarding the reason Sgrillo was terminated.

Initially, we note that there is no record evidence that the Grievance Committee refused to allow Madison Concrete to put on any evidence.  Rather, as we discussed above, the evidence shows that Dolente left the grievance hearing directly after Schmidt suggested that he try to settle the grievance.  (<u>See</u> Schmidt Aff.  ¶ 16; Nugent Aff. ¶ 9; Smith Aff. ¶¶ 8-10.)  In addition, both Schmidt and Smith, who were members of the Grievance Committee, have submitted Affidavits stating that they were not partial toward either party.  Smith's Affidavit states "[i]n no manner was I biased against Madison Concrete nor in favor of Local 107. Rather, I acted solely on the basis of the company's failure to fulfill its contractual obligation to provide the required notice."  (Smith Aff. ¶ 15.)  Schmidt's Affidavit states:

> To the extent that Madison may now be claiming that the hearing panel was biased against it or in favor of the Union, that is simply not true. The decision to uphold the Union's point of order was consistent with the manner in which the requirement of a written notice had been applied in the many years that I have been involved in the interpretation and application of that provision of the governing contract.

(Schmidt Aff. ¶ 19.)  We conclude, accordingly, that Madison Concrete has failed to establish that the Grievance Committee showed evident partiality to the Union in connection with its decision and we deny the Motion to Vacate with respect to this argument.

       5.    <u>Conclusion</u>

For the reasons stated above, we deny Madison Concrete's Motion to Vacate Arbitration Award.  The Union asks to be awarded its costs and attorney's fees incurred in defending this Motion because Madison Concrete acted in bad faith by filing the instant Motion at the last minute and giving spurious reasons for vacating the arbitration award.  "Under the American rule, each party normally must bear the burden of its own legal expenses, including attorneys' fees. One of the narrow exceptions to this rule is a finding that the losing party litigated in bad faith, vexatiously, or for oppressive reasons."  <u>Mobil Oil Corp. v. Indep. Oil Workers Union</u>, 679 F.2d 299, 305 (3d Cir. 1982) (citing <u>Straub v. Vaisman & Co.</u>, 540 F.2d 591, 600 (3d Cir. 1976)).  The Union maintains that it is entitled to attorney's fees because Madison Concrete "obstinate[ly] refuse[ed] to adhere to the grievance committee's decision."  (Surreply at 5.)  Madison Concrete filed the instant Motion to Vacate Arbitration Award during the time provided by the FAA.  The FAA provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  The Grievance Committee issued its decision on August 16, 2022.  (Union Ex. 4.)  Madison Concrete filed the instant Motion to Vacate Arbitration Award on November 14, 2022 and served it on the Union the same day.  (<u>See</u> Docket No. 11.)  We conclude that the instant Motion to Vacate Arbitration Award was filed within the time period provided by the FAA.  We cannot conclude that filing a motion in a timely manner demonstrates bad faith.

We are also unconvinced that all of Madison Concrete's arguments are spurious.  Madison Concrete argued that the Grievance Committee's decision should be overturned because it cured its failure to provide notice pursuant to Article 45, Section 2(a) by sending notice of Sgrillo's termination to the Union on August 16, 2022.  Article 45, Section 2(a) does not include language mandating that required notice be sent prior to a grievance hearing.  We found in favor of the Union with respect to this argument based on the Affidavits provided by the Union in response to the instant Motion, which show that it is the consistent practice of the parties to the CBA to interpret Article 45, Section 2(a) of the Supplemental Agreement to require that written notice of a discharge be provided prior to a grievance hearing.  Madison Concrete also argued that the Grievance Committee's decision should be overturned because the CBA does not require reinstatement as a remedy for failure to provide notice pursuant to Article 45, Section 2(a).  The Union has not identified any language in the CBA that requires reinstatement of an employee as a remedy for failure to provide notice pursuant to Article 45, Section 2(a).  Rather, we found in favor of the Union based on the Affidavits supplied by the Union which show that it is industry practice to order reinstatement where there has been a failure to provide written notice pursuant to Article 45, Section 2(a).  Since our conclusions with respect to these two arguments were not obvious from the face of the CBA, we conclude that these arguments were not spurious.  Accordingly, we deny the Union's request that we award it the costs and attorney's fees it incurred in responding to the Motion to Vacate.

## III.    MOTION TO STRIKE AFFIRMATIVE DEFENSES

The Union has moved to strike Madison Concrete's Affirmative Defenses to the Complaint because an employer's "failure to raise defenses to the enforcement of an arbitration award in a timely motion to vacate or modify the award bars it from raising them thereafter."  United Steel,

Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Neville Chem. Co., 298 F. App'x 209, 211 (3d Cir. 2008) (citation omitted).   The Union brought this action pursuant to Section 301 of the LMRA, which does not have a statute of limitations. "Because Congress did not provide a statute of limitations for suits brought under § 301, this Court is to determine the statute of limitations for the federal cause of action by looking to the most analogous state statute of limitations."   PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh, Commc'n Workers of Am., AFL-CIO Loc. 38061, Civ. A. No. 20-0236, 2020 WL 7211214, at *7 (W.D. Pa. Sept. 14, 2020) (citation omitted), report and recommendation adopted, Civ. A. No. 20-0236, 2020 WL 7065834 (W.D. Pa. Dec. 3, 2020), aff'd sub nom. PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh, 19 F.4th 308 (3d Cir. 2021).  The applicable statute of limitations is the 30-day statute prescribed by the Pennsylvania Arbitration Act ("PAA"), 42 Pa. Consolidated Statutes § 7314."  Id. (quoting 42 Pa. Cons. Stat. Ann. § 7314).  The Union maintains that, because Madison Concrete did not move to vacate or modify the decision of the Grievance Committee until after the time to do so had passed for the purposes of Section 301, it cannot now raise defenses to the enforcement of that decision in connection with the instant action.

Madison Concrete does not dispute that the 30-day statute of limitations prescribed by § 7314 applies to any affirmative defenses that challenge the validity of the Grievance Committee's decision.  Rather, it argues that we should not strike its Affirmative Defenses because those Affirmative Defenses do not challenge the validity of the decision of the Grievance Committee. Madison Concrete asserts the following Affirmative Defenses:

1. Plaintiff has failed to state a claim upon which relief can be granted.

2. Plaintiff's claims may be barred in whole or in part by the applicable statute(s) of limitations or by the doctrine of laches, release, accord and satisfaction, payment, justification, estoppel, waiver, and/or unclean hands.

3. Plaintiff's claims may be barred in whole or in part for failure to mitigate damages.

4. Because Madison Concrete's termination of Sgrillo was for a "cardinal infraction," as defined in Article 45, Section 2(b) of the Philadelphia Supplemental Agreement, Madison Concrete was not required to provide a warning notice to Sgrillo or provide advance notice to the Union of its decision to terminate Sgrillo, Nonetheless, Madison Concrete Construction complied with the Philadelphia Grievance Committee's decision by issuing a written notice of discharge.

5. The written notice of discharge cured the alleged point of order deficiency which formed the basis of the Philadelphia Grievance Committee's decision.

6. Former Madison employee Anthony Sgrillo was terminated for a cardinal infraction under the terms of the Collective Bargaining Agreement, for which no advance notice was required.

(Answer at 4-5 of 8.)  It appears that Affirmative Defenses four, five, and six all challenge the validity and enforceability of the decision of the Grievance Committee.  Madison Concrete is, therefore, barred from asserting these Affirmative Defenses because it did not move to vacate the decision of the Grievance Committee within 30 days after it was issued in accordance with the PAA.  See PG Publ'g, Inc., 2020 WL 7211214, at *7.  Accordingly, we grant the Motion to Strike with respect to Affirmative Defenses four, five, and six.  Madison Concrete's first three Affirmative Defenses, however, do not to attack the validity of the Grievance Committee's decision.  Instead, they challenge the manner in which the Union drafted the Complaint and actions taken by the Union with respect to the Grievance Committee's decision, but not the decision itself. Accordingly, we deny the Motion as to those Affirmative Defenses.

**IV.     CONCLUSION**

For the reasons stated above, we deny Madison Concrete's Motion to Vacate Arbitration Award in its entirety and we grant the Union's Motion to Strike Affirmative Defenses as to Madison Concrete's fourth, fifth, and sixth Affirmative Defenses.  An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.